IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
7:18-CR-00020-D-2

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM IN SUPPORT OF |
| | ) | DEFENDANT'S PRO SE MOTION FOR |
| SAMUEL MONSERRATE-GARCIA, | ) | COMPASSIONATE RELEASE |
| | ) | |
| Defendant. | ) | |

Mr. Samuel Monserrate-Garcia, via undersigned counsel, respectfully moves this Honorable Court to grant his Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) based on the "extraordinary and compelling reasons" presented by his immediate vulnerability to COVID-19 while detained with a high-risk, chronic medical condition. Moreover, as verified herein and also attached to said Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), Mr. Monserrate-Garcia has now properly exhausted his administrative remedies.[1] According to information gathered and relied on by Mr. Monserrate-Garcia, he filed the request with the warden and has not heard any reply to his request as of today's date.

Mr. Monserrate-Garcia currently suffers from Type 2 Diabetes Mellitus, hypertension, and hyperlipidemia (high blood cholesterol). Moreover, he has suffered from congestive heart failure, lung lesions, hypotension, tachycardia, acute pericarditis, seizure disorder, suicidal ideations, and chronic depression and anxiety, which has only served to compound his medical problems and

---

[1] Upon information provided by Mr. Monserrate-Garcia, he filed his request for Compassionate Release with the Warden at Ashland FCI, which was shortly after being made aware of his need to do so. Unfortunately, Mr. Monserrate-Garcia does not have a copy or receipt of the filing for inclusion in the Exhibits of this motion. It is reasonably anticipated that this request will either be denied or the required (30) thirty days will lapse. However, undersigned counsel believed it most efficient for the Court and Mr. Monserrate-Garcia to promptly file her response on the current deadline and as such, is not requesting a continuance to wait for such occurrence to transpire.

1

also places him at the high-risk category of becoming severely ill from COVID-19. (*See* D.E. 92, Presentence Report (PSR), page 8, paragraph 36.); also, *see* **Exhibit A**, 2019 Medical Records, page 120 of 125 wherein it states that Mr. Monserrate-Garcia is suffering from hypertension, diabetes, and seizure while listing the numerous medications needed to try to treat such ailments.

Mr. Monserrate-Garcia was diagnosed with Type 2 Diabetes Mellitus in September 2006, meaning that his condition has progressively deteriorated his kidneys and immune system for almost fourteen (14) years, which further substantiates the impending need for compassionate release given that his immune system is seriously compromised. (*See* D.E. 92, Presentence Report (PSR), page 8, paragraph 36.). Furthermore, Mr. Monserrate-Garcia is designated to Ashland FCI in Kentucky, where an outbreak of COVID-19 appears to be currently transpiring. (*See* https://www.bop.gov/coronavirus/ wherein the public is provided a "snap shot" of one time, which clearly is subject to deteriorating conditions and an increasing hazard of airborne disease from moment to moment.) Currently it is being reported that there are 141 inmates and 21 staff members have contracted the deadly Coronavirus. That being said, Mr. Monserrate-Garcia has just been informed that there are now 254 inmates and 28 staff members who have actually contracted COVID-19. This is exceptionally dangerous for Mr. Monserrate-Garcia given his litany of serious medical problems and consequently being in the high-risk category. Most judges from the Eastern District of North Carolina, have granted such Compassionate Release Requests where it is appropriate to show this type of legally-sanctioned mercy, it is respectfully requested that this Honorable Court also issue an order reducing Mr. Monserrate-Garcia's sentence to time served and/or home confinement given that it is appropriate to do so in Mr. Monserrate-Garcia's immediate case as well. For example, *see United States v. Roberto Pablo Gutierrez*, Crim. No. 5:11-CR-149-1-BR, ECF No. 156 (E.D.N.C. April 30, 2020).

**STATEMENT OF FACTS**

Mr. Monserrate-Garcia was charged and arrested on related state charges on October 7, 2016. On August 7, 2018, without a written plea agreement, Mr. Monserrate-Garcia pled guilty to Counts 1 and 2 of the Superseding Indictment in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A), and 18 U.S.C. § 2, and is now currently serving out a 120-month sentence. This Honorable Court also placed him on five years of supervised release. Mr. Monserrate-Garcia has been incarcerated since October 7, 2016 and his cited release date is for April 15, 2025.

Disturbingly, this current COVID-19 outbreak has not been contained in the United States and certainly and sadly not within our prison walls either. On May 04, 2020 Mr. Monserrate-Garcia filed his Pro Se Motion for Compassionate Release with the United States District, Eastern District of North Carolina. (*See* **Exhibit B**: Pro Se Motion filed by Samuel Monserrate-Garcia.) Based on information provided by Mr. Monserrate-Garcia, he filed a request for Compassionate Release reduction of his sentence with the Warden at Ashland FCI, however, he did not retain copies of such. Thus, it is respectfully submitted that although he has not proceeded in the best order of submitting matters, that this Honorable Court still find that he has satisfactorily pursued his administrative remedies given that all matters have been completed, as required by 18 U.S.C. § 3582(c)(1)(A). Moreover, Mr. Monserrate-Garcia has further followed undersigned's instructions after being appointed in order to ensure to the best of his ability he adhered to properly exhausting his administrative remedies before proceeding herein, which quite candidly further demonstrated the futility of expending the time to properly exhaust the administrative remedies since they were clearly denied. That being said, such requirements "may be waived under the following circumstances: (1) the relief sought would be futile upon exhaustion; (2) exhaustion via the agency review process would result in inadequate relief; or (3) pursuit of agency review would subject the petitioner to undue prejudice." *Casey v. United States*, No. 4: 18-CR-4, 2020 WL 2297 184, at *1

3

(E.D. Va. May 6, 2020). Accordingly, it is respectfully submitted that this is acceptable under these urgent and dire circumstances wherein Mr. Monserrate-Garcia initially proceeded on his own in a *pro se* fashion doing the best he could and knew how to do at that time. *See Haines v. Kerner*, 404 U.S 519, 520 (1972).

## BACKGROUND

Congress first enacted 18 U.S.C. § 3582(c)(1) as part of the Comprehensive Crime Control Act of 1984 to serve as a "safety valve" for judges to assess whether a sentence reduction was warranted by factors that previously would have been addressed through the abolished parole system. S. Rep. No. 98-225, at 121 (1983). "This legislative history demonstrates that Congress, in passing the Comprehensive Crime Control Act of 1984, intended to give district courts an equitable power to employ on an individualized basis to correct sentences when 'extraordinary and compelling reasons' indicate that the sentence initially imposed on an individual no longer served legislative objectives." *United States v. Millan*, No. 91-CR-685 (LAP), 2020 WL 1674058, at * 5 (S.D.N.Y. Apr. 6, 2020).

The compassionate release statute empowered courts to reduce a defendant's sentence whenever "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Congress delegated to the U.S. Sentencing Commission the responsibility of defining what were "extraordinary and compelling reasons." *See* 28 U.S.C. § 994(t) ("The Commission . . . shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."). It was not until 2007, more than two decades after the statute was enacted, that the Commission responded. It issued a guideline stating that "extraordinary and compelling reasons" include medical conditions, age, family circumstances, and "other reasons." U.S.S.G. § 1B1.13, app. n.1(A)-(D).

Mr. Monserrate-Garcia is unfortunately immunocompromised given his long-standing internal fight with diabetes, hypertension, and hyperlipidemia. (*See* **Exhibit A**, Mr. Monserrate-Garcia's 2019 Medical Records.) Mr. Monserrate-Garcia's request for compassionate release qualifies under the guidelines as extraordinary and compelling reasons. Application Note 1(A)(ii) to Guidelines Section 1B1.13 states extraordinary and compelling reasons, which include when

The defendant is—

(I)  suffering from a serious physical or medical condition;
(II)  suffering from a serious functional or cognitive impairment; or
(III)  experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 app. n. 1(A)(ii). Application Note 1(B) identifies extraordinary and compelling reasons to include Mr. Monserrate-Garcia's "suffering from a serious physical or medical condition." Furthermore, Application Note 1(D) created a catch-all provision, for when the Director of the BOP determined "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."

As originally enacted, the statute left sole discretion for filing compassionate release motions with the Director of the BOP, who adopted a program statement governing compassionate release that in many ways narrowed the criteria established by the Commission. *See* BOP Program Statement 5050.49. During the span of more than three decades, the BOP rarely filed motions on behalf of inmates who met the eligibility criteria. The Office of the Inspector General for the Department of Justice concluded in 2013 that "[t]he BOP does not properly manage the compassionate release program, resulting in inmates who may be eligible candidates for release not being considered." Department of Justice, Office of the Inspector General, *The Federal Bureau*

5

*of Prisons' Compassionate Release Program* (April 2013), at 11, available at https://oig.justice.gov/reports/2013/e1306.pdf; *see also* Department of Justice, Office of the Inspector General, *The Impact of an Aging Inmate Population on the Federal Bureau of Prisons* (May 2015), at 51, available at https://oig.justice.gov/ reports/2015/e1505.pdf ("Although the BOP has revised its compassionate release policy to expand consideration for early release to aging inmates, which could help mitigate the effects of a growing aging inmate population…", decades of denying such Compassionate Release Reduction Requests are imprinted in its long standing history); U.S.S.G. § 1B1.13, app. n.4 (admonishing BOP for its past failure to pursue relief on behalf of eligible inmates). Heeding this criticism, Congress acted.

The title of Section 603(b) of the First Step Act—"Increasing the Use and Transparency of Compassionate Release"—leaves no doubt as to Congress' intent in modifying 18 U.S.C. § 3582(c)(1)(A). Through the First Step Act, enacted December 21, 2018, Congress sought to resuscitate compassionate release by, *inter alia*, allowing defendants to directly petition courts for relief, rather than leaving that power solely in the hands of the BOP. *See* 18 U.S.C. § 3582(c)(1)(A). "[U]nder the amended statute, a court may conduct such a review also 'upon motion of the defendant,' if the defendant has exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or if 30 days has lapsed 'from the receipt of such a request by the warden of the defendant's facility,' whichever is earlier." *United States v. Decator*, No. CCB-95-0202, 2020 WL 1676219 (D. Md. Apr. 6, 2020) (*quoting* 18 U.S.C. § 3582(c)(1)(A)(i); Pub. L. 115-391, Title VI, § 603(b), Dec. 21, 2018, 132 Stat. 5239), *appealed by the government*. In other words, "a prisoner must exhaust the administrative appeal process, or wait 30 days, before his claim may be considered" by the court. *United States v. Underwood*, No. TDC-18-0201, 2020 WL 1820092, at *2 (D. Md. Apr. 10, 2020) (citing cases).

## ARGUMENT

Medical professionals within our country and around the world for that matter have deemed Mr. Monserrate-Garcia's vulnerability to COVID-19 as being placed in the high-risk category of likely not being able to survive the Coronavirus if he contracts it due to his long history of medical problems.https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. This constitutes "extraordinary and compelling reasons" for relief. Mr. Monserrate-Garcia's underlying medical conditions make him especially vulnerable to COVID-19, constituting "extraordinary and compelling reasons" for relief. His release does not pose a danger to the community, and a balancing of the § 3553(a) factors with the risks to Mr. Monserrate-Garcia posed by COVID-19 warrants relief.

**A. This Honorable Court has the authority to determine that Mr. Monserrate-Garcia's vulnerability to COVID-19 does in fact constitute an "Extraordinary and Compelling Reason" for a sentence reduction.**

Many federal judges across the country are holding that they have the authority to define "extraordinary and compelling reasons" for release under § 1B1.13 app. n. 1(D) and that the risks associated with COVID-19 can constitute an "extraordinary and compelling reason" for a sentence reduction. Courts have used their wise and appropriate discretion to provide defendants with relief under § 3582(c)(1)(A) "even when their circumstances do not fit squarely within the current policy statement of the Sentencing Commission as reflected in U.S.S.G. §1B1.13." *United States v. Alexander Salabrarria*, Crim. No. 7:00-CR-95-1-BO, ECF No. 125, page 5 (E.D.N.C. April 14, 2020), citing *United States v. Mauma*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *4 (D. Utah Feb. 18, 2020) (listing cases holding same).

In *United States v. Mel*, Judge Chuang held that "[a]s applied to Mel, the COVID-19 pandemic presents 'extraordinary and compelling reasons' that warrant the modest sentencing reduction requested." 2020 WL 2041674, at *2. Ms. Mel had submitted documents establishing that she had a thyroid mass that doctors estimated had a 25- to 40-percent chance of malignancy.

7

While Judge Chuang found he could not "conclude with certainty" that Mel had a health condition that placed her at particular risk to severe illness from COVID-19, he "nevertheless . . . f[ound] that the historic COVID-19 pandemic, the fact that Mel has been incarcerated in one of the federal prisons most profoundly impacted by COVID-19 [FCI Danbury], and the fact that as a result of the outbreak, she has effectively been prevented from receiving necessary medical care for a potentially life threatening condition, collectively establish 'extraordinary and compelling reasons' within the meaning of 18 U.S.C. § 3852(c)(1)(A)." *Id.* at 3.

Judges in districts throughout the United States have recognized that, at least for certain defendants, COVID-19 presents "extraordinary and compelling reasons" warranting a reduction in their sentences under the compassionate release statute. Just as in Mr. Monserrate-Garcia's case, the Honorable Judge Boyle granted such relief in *United States v. Stye Lamar Coleman* (4:10-CR-50BO-1) where Mr. Coleman had hypertension, prediabetes, and was obese. They vary from individual to individual, which is to be expected, but a common thread attaches them all; that is, the need to otherwise have a fighting chance at surviving alongside the necessary love of your family, as opposed to physically suffering and unnecessarily deteriorating once the coronavirus is contracted by an inmate because of his or her unfortunate medical diseases and concerns or simply due to the fact that COVID-19 is running rampant across our federal prison system leading to unnecessary suffering and death amongst the inmates therein. Some of these cases are cited below to identify the range of which Federal Courts across the country are granting such Compassionate Release Requests. These cases include, but are not limited to:

- *United States v. Hansen*, No. 17-cr-50062, 2020 WL 2219068 (N.D. Ill. May 7, 2020) ("[T]he Court cannot discount the risk to Hansen if he contracts coronavirus, as reliable information places him in a higher-risk category. Specifically, the presentence report documents that he suffers from **diabetes, hypertension, high cholesterol**, kidney disease, and chronic obstructive pulmonary disease, all of which are confirmed risk factors for serious illness if one contracts coronavirus.")

8

- *United States v. Amarrah*, No. 17-20464, 2020 WL 2220008 (E.D. Mich. May 7, 2020) (shortening 60-month sentence after only 21 months because Amarrah's "**Type II diabetes**, hypertensive heart disease, cardiac arrhythmia, obstructive sleep apnea, and asthma" put him a substantial risk should he contract COVID-19 even though facility had no reported cases)

- *United States v. Quintero*, No. 08-cr-6007L, 2020 WL 2175171 (W.D.N.Y. May 6, 2020) (granting compassionate release to man who "suffers from **diabetes**, a compromised immune system, obesity, and **hypertension**," "which make him more susceptible than another to contract the virus.")

- *United States v. Reid*, No. 17-cr-00175-CRB-2, 2020 WL 2128855 (N.D. Cal. May 5, 2020) (granting compassionate release based on risks COVID-19 presents to individual with **hypertension, high cholesterol**, and Valley Fever, which causes lung infection and can result in acute pneumonia);

- *Casey v. United States*, No. 4:18-cr-4, 2020 WL 2297184, at *3 (E.D. Va. May 6, 2020)("The Court finds that Petitioner has set forth extraordinary and compelling reasons to modify his sentence because of the great risk that COVID-19 poses to a person of his age with underlying health conditions.");

- *United States v. Rodriguez*, No. 2:03-cr-00271-AB-1, 2020 WL 1627331, at *7 (E.D. Pa. Apr. 10, 2020) ("Mr. Rodriguez's circumstances—particularly the outbreak of COVID-19 and his underlying medical conditions that place him at a high risk should he contract the disease—present 'extraordinary and compelling reasons' to reduce his sentence."); and

- *United States v. Miller*, No. 16-cr-20222-1, 2020 WL 1814084, at *4 (E.D. Mich. Apr. 9, 2020) ("Miller squarely fits the definition of an individual who has a higher risk of falling severely ill from COVID-19. . . . Therefore, the Court finds that extraordinary and compelling reasons exist for his immediate compassionate release.").

There is no question that Section 603(b) of the First Step Act fundamentally changed the role of the Courts in the compassionate release process, vesting them with the authority to determine what constitutes extraordinary and compelling reasons for release. This pandemic, as applied to Mr. Monserrate-Garcia with his current chronic illness and lack of recommended treatment, is an extraordinary and compelling circumstance.

**B. Mr. Monserrate-Garcia's Situation Presents an "Extraordinary and Compelling" Reason Warranting a Reduced Sentence.**

9

The Centers for Disease Control have identified several factors that put individuals at higher risk for severe illness. *People With Medical Conditions,* CDC. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html Those underlying conditions include Diabetes and hypertension. *Id.*

In a recent study on the virus done in the New York City area, "nearly every patient hospitalized with COVID-19 had more than one underlying health issue." https://www.nytimes.com/2020/04/23/health/coronavirus-patients-risk.html. High blood pressure (hypertension), obesity, and diabetes were the most common underlying conditions. *Id.* Fifty-seven percent (57%) of those patients had high blood pressure, forty-two percent (42%) had obesity, and thirty-four percent (34%) had diabetes. *Id*. Ninety percent of patients that required ventilators later died, and those between 18 and 65 experienced a 76% mortality rate. Similarly, as Judge Chuang noted in a recent opinion ordering the release of a defendant from the Central Treatment Facility in Washington, D.C., "as of March 2020, three-fourths of individuals who died from COVID-19 in Italy had hypertension." *United States v. Keaton*, No. TDC-18-0215, ECF No. 84 at *5 (D. Md. Apr. 23, 2020) (citing *Coreas v. Bounds*, No. TDC-20-0780, 2020 WL 1663133, at * 1 (D. Md. Apr. 3, 2020).

Mr. Monserrate-Garcia has multiple risk factors identified by the Centers for Disease Control and studies on those infected and that is "people with more than one underlying medical condition." His particular vulnerability to COVID-19 constitutes an extraordinary and compelling reason for relief given the spread of the virus within the Bureau of Prisons and the likely deadly impact it would have on him personally if contracted.

According to the Bureau of Prisons website, 6,477 federal inmates and 1,662 BOP staff members currently have tested positive for COVID-19, and 153 inmates and 2 BOP Staff Member

have died. Moreover, 141 inmates and 21 staff members are currently reported on the BOP Website to have contracted COVID-19 at FCI Ashland. However, it is important to note that, that appears that number is increasing at such a rapid rate that the BOP Website is unable to ensure its accuracy in real time. This is due to the fact that Mr. Monserrate-Garcia has just been informed by officials within his BOP that the number has been increased to 254 inmates and 28 staff members who have contracted the coronavirus. This is exceptionally alarming especially for Mr. Monserrate-Garcia who is in the high-risk category. BOP, *COVID-19 Cases*, https://www.bop.gov/coronavirus/. (These numbers continue to climb up as well as each hour passes.) In total, out of the 124,250 inmates in BOP custody, 11,135 have tested positive for COVID-19, equating to 8.68% of federal inmates that have tested positive. *Id*. While the Bureau of Prisons has made efforts to reduce the spread of the virus throughout the federal prison system, the rate of infection is far higher within the Bureau of Prisons than within the community at large, and continues to spread at an alarming rate, as the below graph demonstrates.



Amid this rapidly-unfolding crisis, the universally-recommended antidote is simple: reduce the prison population by releasing those whose continued incarceration is not necessary to protect

the public so that correctional institutions can better protect those who need to stay incarcerated.[2]

Mr. Monserrate-Garcia is exactly the type of individual deserving of compassionate release: he is at risk of severe illness and, as will be discussed in the next section, his release does not pose a danger to the community and balancing the 3553(a) factors warrants the requested relief.

### C. The Relevant § 3553(a) Sentencing Factors Warrant Reducing Mr. Monserrate-Garcia's Sentence to Time Served / Adding a Period of Home Confinement as a Condition of Supervised Release.

Under the compassionate release statute, when a defendant establishes the existence of extraordinary and compelling circumstances justifying relief, courts must consider the relevant sentencing factors of 18 U.S.C. § 3553(a) to determine whether a sentencing reduction or modification is warranted. 18 U.S.C. § 3582(c)(1)(A)(i). Here, Mr. Monserrate-Garcia's compromised physical health, and the unique danger he faces if he contracts COVID-19 while being incarcerated especially when considering the cumulative effect of all medical factors impacting him and becoming severely ill, when combined with the other Section 3553(a) sentencing factors, clearly warrant relief.

First, Mr. Monserrate-Garcia pled guilty to Conspiracy to Distribute and possess with intent to distribute 50 grams or more of Methamphetamine and also to Possession with Intent to Distribute 50 grams or More of Methamphetamine and Aiding and Abetting on October 7, 2016.

---

[2] For example, on March 27, 2020, more than 400 former DOJ leaders, attorneys, and federal judges sent an open letter to the President, asking that he take immediate action to reduce the population in correctional facilities to prevent the catastrophic spread of COVID-19, in particular by commuting the sentences of elderly and medically vulnerable inmates who have already served a majority of their sentence. *See https://fairandjustprosecution.org/wp-content/uploads/2020/03/Letter-to-Trump-from-DOJ-and-Judges-FINAL.pdf*. The same day, dozens of public health experts made a similar request, asking the President to commute the sentences of elderly inmates, noting they are at the highest risk of dying from the disease and pose the smallest risks to public safety. *See https://thejusticecollaborative.com/wp-content/uploads/2020/03/Public-Health-Expert-Letter-to-Trump.pdf*.

Thus, while Mr. Monserrate-Garcia's offense conduct was certainly serious, it did not involve any weapons, violence, or threats of violence.

Second, continued incarceration is not necessary to protect the community from the crimes of the defendant. He is older, weaker and much more vulnerable with his numerous ailments. Moreover, his serious health conditions also serve as another impeccable deterrent to conducting himself in the most positive of ways.

Finally, in this case, like those cited above, a reduction or modification of Mr. Monserrate-Garcia's sentence would not diminish the seriousness of the offense, nor would it place the public in any danger. The extraordinary and compelling circumstances presented by the uncontrolled spread of COVID-19—compounded by the heightened risks faced by Mr. Monserrate-Garcia, whose ability to engage in basic self-protective measures is restricted and thus, warrant relief.

Moreover, Mr. Monserrate-Garcia has an immediate release plan. He has a close relationship with his older brother Santiago Monserrate-Garcia. Santiago resides in Maple Hill, North Carolina and plans on having Samuel live with him and work in Onslow County upon his release. Santiago lives with his wife and two kids on a farm in Maple Hill and used to be in the restaurant business where he hopes to have Samuel assist upon his release once the restaurant industry reboots after the COVID-19 pandemic is over. Accordingly, if this Honorable Court grants his compassionate release, Mr. Monserrate-Garcia's older brother, Santiago, will do everything he can to support Mr. Monserrate-Garcia emotionally and otherwise since their goals will certainly be aligned with both the Court's and Mr. Monserrate-Garcia's as well; that is, to compassionately permit Mr. Monserrate-Garcia to receive the proper medical care and succeed on the outside while preventing him from having to unnecessarily and inhumanely further suffer and deteriorate in custody.

## CONCLUSION

Mr. Monserrate-Garcia has demonstrated extraordinary and compelling reasons for compassionate release and respectfully requests this Honorable Court to reduce his sentence to time served and/or add a period of home confinement as a condition of supervised release.

Respectfully submitted, this the 10th day of December 2020.

>GUIRGUIS LAW, PA
>
>/s/ Nardine Mary Guirguis
>Nardine Mary Guirguis
>PANEL Attorney
>434 Fayetteville St., Suite 2140
>Raleigh, North Carolina 27601
>Telephone: (919) 832-0500
>Facsimile: (919) 246-9500
>nardine@guirguislaw.com
>
>*Designation: CJA Appointed*

CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served upon the Assistant Attorney for the United States electronically at the following address:

>Scott A. Lemmon
>Assistant United States Attorney
>Scott.lemmon@usdoj.gov
>150 Fayetteville Street, Suite 2100
>Raleigh, North Carolina 27601

This 10th day of December 2020.

>GUIRGUIS LAW, PA
>
>/s/ Nardine Mary Guirguis
>Nardine Mary Guirguis
>PANEL Attorney

15